IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 7, 2015

**STATE OF TENNESSEE V. JAMES EGGLESTON**

**Appeal from the Criminal Court for Shelby County**
**No. 1301603     Chris Craft, Judge**

_____

**No. W2014-02103-CCA-R3-CD  -  Filed August 21, 2015**
_____

Defendant, James Eggleston, appeals his conviction for aggravated robbery and sentence of eighteen years and six months in incarceration. On appeal, he insists that the evidence was not sufficient to support the conviction and that his sentence is excessive, especially in light of his reported mental illness. After a review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Stephen C. Bush, District Public Defender; Alicia Kutch (at trial) and Barry W. Kuhn (on appeal), Assistant Public Defenders, for the appellant, James Eggleston.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Amy P. Weirich, District Attorney General; and Lora Fowler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This is Defendant's direct appeal from his conviction in the Criminal Court for Shelby County of aggravated robbery and eighteen years and six months sentence as a Range II, multiple offender.

Defendant was indicted by the Shelby County Grand Jury in April of 2013 for aggravated robbery. At trial, the victim, Charles Rye, testified that he drove a taxicab in Memphis. In the early morning hours of April 12, 2012, he parked his taxicab next to the

sidewalk at a BP gas station on Poplar Avenue. Mr. Rye entered the store. As he exited the store, he saw a man coming around the corner of the building. The man was mumbling something incoherent. Mr. Rye addressed the man and asked, "What?" As Mr. Rye got the keys to the taxicab ready to unlock the door of the vehicle, the man hit him in the forehead with a large rock, knocking him to the pavement. Mr. Rye received a large laceration on his head. When Mr. Rye looked up, he saw his taxicab pulling away.

Officers of the Memphis Police Department ("MPD") were summoned to the BP station upon a report of a carjacking. Mr. Rye was able to describe the man to Officer Rebecca Tarena upon her arrival. Officer Tarena called an ambulance to attend to Mr. Rye. Upon learning that the taxicab was equipped with GPS, authorities contacted the taxicab company to find out the location of the vehicle.

Officer Geoffrey Redd was on patrol that morning. He received the report of the carjacking and located the taxicab parked in the rear of the Save-Stop at the intersection of Clearbrook and American Way. Officer Redd sought backup as he approached the vehicle. The vehicle was empty, but Officer Redd saw a black male, later identified as Defendant, walking westbound on Perkins Avenue. He fit the description of the perpetrator provided by the victim. Officer Redd approached Defendant and asked him to talk. Defendant "took off running." By this time, Officer Redd was joined by several other officers. They gave chase to Defendant on foot. Officer Redd instructed Defendant to "just lay down on the ground and let's go ahead and get this . . . over with." Defendant responded that he could not "do that." At this point, Defendant was on a bridge. He walked out to the outside of the railing where there was no protection from falling or jumping. Defendant asked for his mother and threatened to jump if the officers did not comply. Officer Redd summoned Defendant's mother to the scene. Defendant eventually came back over the railing, was arrested, and taken into custody.

Mr. Rye identified Defendant in a photographic lineup and at trial as the man who robbed him.

Defendant testified at trial that he did not remember anything at all about the incident. He claimed that the first time he saw Mr. Rye was when he entered the courtroom.

Defendant's memory of that day was hazy. He remembered "seeing things around the house that moved and disappeared and stuff and when [he would] go outside [he] would hear like the birds singing like they [were] talking to [him] when they whistled, they [were] whistling words," calling him a "Sissy Bitch." He also thought that people were "throwing bugs on him." The bugs were "itching" and "biting." Defendant remembered waking up in a hospital, specifically Memphis Mental Health Institute

("MMHI"). Defendant had tried to go to MMHI the night prior to the incident to get medication. The security guard kicked him out and, after that, "everything kind of went black."

Defendant acknowledged multiple prior convictions for theft as a result of "stealing stuff from stores" but could not recall the dates of those convictions. Defendant was asked if he remembered hitting the victim on the head with a rock and claimed that he "wouldn't do nothing like that." As a result, he was questioned about his conviction for reckless aggravated assault from 2009. That incident involved an argument with his neighbor during which Defendant hit his neighbor with a car while the neighbor was sitting in a chair. He recalled pleading guilty to reckless aggravated assault.

At the conclusion of the proof, the jury found Defendant guilty of aggravated robbery.

The trial court held a separate sentencing hearing at which Dr. Debbie Nicholas, a Forensic Services Coordinator for West Tennessee Forensic Services, testified about her attempts to evaluate Defendant's competency to stand trial. Dr. Nicholas had interacted with Defendant since 2002. With regard to the evaluation for trial herein, Defendant refused to cooperate in order for her to complete an evaluation. Dr. Nicholas explained that Defendant's lack of cooperation was not atypical for a person that had been previously diagnosed with paranoid schizophrenia, schizoid affective disorder, atypical psychosis, and an adjustment disorder with depression. Dr. Nicholas testified that Defendant's diagnoses were manageable with medication and that Defendant had no intellectual disabilities. With regard to this particular case, Defendant had a diagnosis of "malingering" or the "presentation of symptoms that one does not have." In other words, Defendant could have been exaggerating his symptoms or even presenting symptoms that did not exist.

Defendant was evaluated by MMHI. The evaluation from MMHI revealed that Defendant "hides his true knowledge of the legal system by either being selectively mute . . . or intentionally giving incorrect information." Defendant had been observed in 2002 "telling another patient how to play worse off than he actually was."

Defendant's mother, Shirley Eggleston, testified at the sentencing hearing. She acknowledged that Defendant did not take his medication on a regular basis unless he was receiving court-ordered treatment. Mrs. Eggleston asked the court to place Defendant in a treatment facility.

Defendant apologized to the victim and asked the trial court for the minimum sentence of twelve years.

At the conclusion of the sentencing hearing, the trial court sentenced Defendant as a Range II, multiple offender to serve eighteen years and six months in the Department of Correction at 85%. The trial court also "[j]udicially recommended that [D]efendant be sent to a facility to receive mental health treatment."

After the denial of a timely filed motion for new trial, Defendant appeals.

*Analysis*

*Sufficiency of the Evidence*

On appeal, Defendant insists that the evidence is insufficient to support the conviction for aggravated robbery because Defendant "was not in the cab, and his fingerprints were not found in the cab. He was merely in the vicinity of the cab." The State disagrees, noting that Defendant was identified by the victim as the perpetrator from a photographic lineup as well as at trial.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Reid*, 91 S.W.3d at 277. Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

"The identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving the identity of the defendant as the perpetrator beyond a reasonable doubt. *State v. Cribbs*, 967 S.W.2d 773, 779 (Tenn. 1998). The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (citing *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)). "[T]he testimony of a victim, by itself, is sufficient to support a conviction." *Id.* (citing *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)).

Relevant to this case, the State had to prove the following to sustain a conviction for aggravated robbery: that Defendant committed a robbery "accomplished with a deadly weapon or by display of an article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1). Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). A deadly weapon is "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury" or "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." T.C.A. § 39-11-106(a)(5)(A), (B).

Viewed in the light most favorable to the State, the proof showed that the victim was approached by Defendant while his taxicab was parked at the BP station. Defendant hit the victim on the head with a large rock, knocking him to the ground. The victim had a large cut on his forehead as a result of being hit with the rock. The victim next saw the taxicab being driven from the gas station. The victim was able to describe Defendant, identify him from a photographic lineup, and identify him at trial. After receiving the description of Defendant and utilizing the GPS onboard the taxicab, police located the taxicab. Defendant was found nearby and fled on foot when approached by authorities. Defendant threatened to jump off a bridge before eventually being taken into custody. Defendant claimed no memory of the event itself, only his behavior prior to and after the event, including hearing talking birds. The jury accredited the testimony of the State's witnesses, and it is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Reid*, 91 S.W.3d at 277.

Moreover, the jury was instructed that it could consider flight as an inference of guilt when evaluating the totality of the evidence. "A defendant's flight and attempts to evade arrest are relevant as circumstances from which, when considered with the other facts and circumstances in evidence, a jury can properly draw an inference of guilt."

*State v. Zagorski*, 701 S.W.2d 808, 813 (Tenn. 1985); *see also State v. Caldwell*, 80 S.W.3d 31, 40 (Tenn. Crim. App. 2002). The evidence is sufficient to support the conviction for aggravated robbery. Defendant is not entitled to relief on this issue.

*Sentencing*

Defendant also challenges his sentence as excessive. Specifically, he argues that his mental illness is severe and that the trial court should have utilized his condition to mitigate his sentence to the minimum punishment of twelve years. The State argues that the trial court did not abuse its discretion in sentencing Defendant.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *State v. Kyto Sihapanya*, No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *2 (Tenn. Apr. 30, 2014) (internal quotation omitted). This deferential standard "does not permit an appellate court to substitute its judgment for that of the trial court." *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).

A trial court must consider all of the following when fashioning a proper sentence:

(1) any evidence received at the trial and sentencing hearing, (2) the pre-sentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment.

*Id.* at *1 (citing T.C.A. §§ 40-35-102, -103, -210(b)(1)-(7)).

At the conclusion of the sentencing hearing, the trial court stated its reasons for the eighteen-year, six-month sentence on the record. The trial court noted Defendant's two

prior Class C felonies, attempted aggravated robbery and aggravated assault, and utilized them to enhance Defendant's sentence based on Tennessee Code Annotated section 40-35-114(1) (previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range). The trial court noted that Defendant had a lengthy criminal history comprised of approximately 40-50 additional criminal convictions, including 23 theft convictions, a conviction for failure to appear, two vandalism convictions, resisting official detention, several drug paraphernalia convictions, several driving on a revoked license convictions, six assault and domestic violence convictions, and four criminal trespass convictions. The trial court also applied enhancement factor eight, as Defendant had previously failed to comply with the conditions of a sentence involving release into the community. T.C.A. § 40-35-114(8). Defendant was released on probation for aggravated assault and violated that probation.

Defendant's argument on appeal is that the trial court should have considered his "severe mental illness" to reduce his culpability, resulting in the mitigation of the sentence down to the minimum of twelve years. The application of enhancement and mitigating factors is advisory, and the weight given to them is in the trial court's discretion. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The trial court considered Defendant's mental illness in mitigation but discussed Defendant's previous diagnosis of malingering at length, noting that there was a "serious question about how much he is faking." Additionally, the trial court found that Defendant failed to take his own medication to treat his mental health, had a significant criminal history, and had failed at completing a term of probation in the past. The trial court then sentenced Defendant to eighteen years and six months with the recommendation that he be incarcerated in a facility that would treat his mental illness. The trial court followed the proper sentencing procedure. There was no abuse of discretion. Defendant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed in full.

_____
TIMOTHY L. EASTER, JUDGE